```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
MERVYN FRANKEL,

                    Plaintiff,     06 Civ. 5450 (LTS)(DFE)
                                   07 Civ. 3436 (LTS)(DFE)
        - against -
                                   REPORT AND RECOMMENDATION
CITY OF NEW YORK, et al.,          TO JUDGE SWAIN

                    Defendants.
------------------------------------x
```

DOUGLAS F. EATON, United States Magistrate Judge.

    1.  These two cases were filed by *pro se* plaintiff Mervyn Frankel, who has been an employee of the City of New York since 1989, with the Department of Environmental Protection ("DEP") since 1994 and always with the title of Computer Specialist (Software), Level 3.  His Complaint in 06 Civ. 5450 alleges age discrimination and retaliation; his Complaint in 07 Civ. 3436 alleges religious discrimination and retaliation.

    2.  Plaintiff took nine depositions, and discovery closed on December 3, 2007, except for some documents that were produced after I signed a Protective Order on January 17, 2008.

    3.  In a fax letter to me dated January 8, 2008, plaintiff said that he would be sending me a cross-motion for summary judgment.  At the end of my 1/17/08 Memorandum and Order, I warned him that "[i]n an employment discrimination case, it is virtually impossible for a plaintiff to obtain summary judgment," but I set forth an amended briefing schedule calling for defendants' summary judgment motion by March 7 and plaintiff's cross-motion by March 24.  To my surprise, plaintiff served his motion first, on February 13.  The motion was four inches thick.  As explained in my 2/28/08 Memorandum and Order, both sides wanted to redact a few portions of the motion, and so I held the February 13 motion in my chambers without docketing it.  After the redactions were made, the redacted version of plaintiff's February 13 motion was docketed as Docket Items #48, #49 and #50.  The defendants served and filed opposing papers (Docket Items #33 and #34), and then plaintiff served and filed reply papers (Docket Items #38 and #41).

    4.  However, the "main event" is defendants' motion for summary judgment.  Defendants served and filed a Notice of Motion

with attachments about two inches thick (Docket Item #31) and a supporting Memorandum of Law (Docket Item #32).  Once again, both sides wanted to redact a few portions of this motion.  In a joint letter to me dated April 2, 2008, they agreed that Docket Item #31 would be replaced by a slightly amended document (filed on April 10 as Docket Item #37).  On April 17, 2008, plaintiff filed his opposing papers (Docket Items #39, #40, #42 and #43).  On May 5, 2008, defendants filed reply papers in support of their summary judgment motion (Docket Items #44 and #45).

    5.   For the reasons set forth below, I recommend that Judge Swain grant defendants' motion for summary judgment.  The age discrimination claim fails because no rational jury could find that Frankel has been subjected to an "adverse employment action."  His religious discrimination claim objects that certain voluntary overtime projects are scheduled for Friday evening or Saturday rather than Sunday; no rational jury could find that there was any "employment requirement" which conflicts with his religious beliefs.  His retaliation claims fail because no rational jury could find that he has been subjected to "a materially adverse action," defined as that which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

### FACTUAL AND PROCEDURAL BACKGROUND

    6.   Frankel was born on May 1, 1946.  He has worked at DEP since 1994, always with the title of Computer Specialist (Software), Level 3.  In view of his Orthodox Jewish religion, DEP has always allowed him to work Monday through Thursday from 8:00 a.m. to 4:00 p.m. and Friday from 7:30 a.m. to 2:30 p.m. (Def. Exh. C at Tr. 174-75.)  "Def. Exh. __" refers to certain of the Exhibits A through BB attached at the end of defendants' Notice of Motion, Docket Item #37.  Other attachments are nearer to the front of that Notice of Motion, including Defendants' Statements under Local Civil Rule 56.1 and 56.2, and a Declaration by Kevin Madden (¶4 describes each of the Def. Exhs.), and Declarations by Cecil McMaster and by Joan Palmer.

    7.   On January 22, 2003, Robert Cucinotta was appointed as Assistant Commissioner of DEP's Office of Information Technology ("OIT").  He was removed from his position in July 2004, and was replaced by Cecil McMaster.  (Palmer Decl. ¶¶ 7, 9-10; Def. 56.1 ¶¶16, 25, 27.)  Frankel charges McMaster with age discrimination in violation of the Age Discrimination in Employment Act ("ADEA").  The defendants' initial memorandum of law correctly points out:

> The ADEA only allows recovery for economic losses.  The Second Circuit has held that the ADEA does not allow recovery for emotional damages, and that relief under the ADEA is limited to "back pay, liquidated damages, and injunctive relief such as reinstatement."  <u>Johnson v. Al Tech Specialties Steel Corp.</u>, 731 F.2d 143 [, 148] (2d Cir. 1984); <u>Haskell v. Kaman Corp.</u>, 743 F.2d 113 [, 120-21] (2d Cir. 1984).  As set forth herein, the record is devoid of any evidence that the plaintiff suffered any economic damages as he has not been subject to a demotion or reduction in pay nor has he ever applied for a promotion ....

(Docket Item #32, Def. Mem. at 5 at n.4.)  Accord: *Meyers v. I.B.M. Corp.*, 335 F.Supp.2d 405, 411 (S.D.N.Y. 2004)(Robinson, J.): "the ADEA does not allow plaintiffs to recover for emotional distress, pain and suffering, **or any other type of non-economic damage**."  (emphasis added)

8.  Frankel's opposing papers doggedly try to show some economic damages.  Frankel places great emphasis on an e-mail written by Cucinotta on June 7, 2004, shortly before he was removed; it said:  "The following OIT assignment changes are effective immediately.  Merv Frankel will move from Finance/Administration to manage a new Security/Analysis unit reporting directly to me.  Lisa Nicholls and Ed Blanco will also be in this unit ...."  (Def. Exh. K, p. 4.)  Frankel testified that this was the first time he was ever given an "office" title; he says the "office" title was "Manager of Security/Analysis," and I will accept this as true.  (Exh. C at Tr. 46-47.)

9.  However, this "office" title lasted for only one or two months, and it appears that Frankel had no significant opportunity to supervise Nicholls and Blanco.  **The loss of this "office" title did not involve any economic loss to Frankel**.

10.  In July 2004, Cucinotta was removed and replaced by McMaster.  At the direction of DEP Commissioner Christopher Ward, McMaster began to implement a new organizational structure within OIT, dividing its work groups into (a) Server Operations, (b) Network Design and Administration (also known as Networking), (c) Application Development, and (d) Desktop Integration and Data Security.  (McMaster Decl. ¶4; Def. 56.1 ¶28.)  McMaster requested each OIT employee to submit a resume, and he then met separately with each employee to discuss his or her skill sets and how best they might be utilized in the planned re-

organization.  (Def. 56.1 ¶29; plaintiff's counter-statement (Docket Item #39) admits ¶29 and adds that "Mr. McMaster refused to allow the status quo of allowing Mr. Frankel to continue as Manager of Security/ Analysis.")

    11.  McMaster reassigned eight employees, including plaintiff, to different divisions within OIT.  On or about August 16, 2004, he assigned plaintiff to OIT's Networking Group, to be supervised by Keino Leitch, who was only 30 years old but had been manager of that Group for some years.  (Defs. 56.1 ¶¶36, 37, 39.)  "Mr. Frankel suggested that he co-manage the networking group.  Mr. McMaster refused this option ...."  (Docket Item #39 ¶31.)

    12.  Four days after being reassigned to Leitch's group, Frankel made an internal complaint of age discrimination against McMaster.  He did so on August 20, 2004; on the same day, he was interviewed by DEP's EEO Investigator Michael Walczyszyn.  The first three pages of Def. Exh. K appear to be Walczyszyn's handwritten notes of the interview.  They include the following:

> Cecil inter[viewed] staff when 1st came on
> ....
> Asked ["] How old are you ["] repeatedly
> Suggested that since I'm older
>   I [should] let younger blood manage &
>   [I was to] report to Keino.
> My credentials [are] more powerful than Keino's
> ....
> [I'd] rather quit than report to Keino
>   - [my] experience outweighs Keino's
>   - Cecil & Keino are joined at the hip
>   - experience-wise - humil[iating] to report to Keino
> ....
> I think Keino is getting pref[ential] treatment
>   because of race
> Everyone "but one" is of same race
>   in Keino's group
> Group size [is] 5
> I'm not comfortable in that group
> ....

    13.  At his deposition, Frankel was asked about that interview: "Q. .... Isn't it true that you informed DEP's EEO that you felt you didn't fit in to the IT group because of your complexion?  A.  That was a momentary reaction.  * * *  That was a long time ago.  That feeling does not exist."  (Def. Exh. C at Tr. 201.)

14. On August 27, 2004, Frankel sent an e-mail to Deputy Commissioner David Tweedy. A photocopy of it is at page 45 of the 06 Civ. 5450 Complaint; Frankel wrote: "Although DEP would best be served by my being part of OIT, documented past history has shown that I can not be effective on the tenth floor. .... This e-mail is a formal request for transfer out of OIT."

15. By letter dated September 7, 2004, DEP's EEO Officer Martha Osenni replied to that transfer request by reminding Frankel "that Citywide Job Vacancy Notices can be found in the Human Resources reception area on the 18th floor of the Lefrak Tower." She also wrote: "Mr. McMaster has denied making any comments about your age and as there were no witnesses to corroborate your claim, your allegations cannot be substantiated." (Def. Exh. L.) Nine days later, Ms. Osenni sent Frankel an e-mail (Def. Exh. M) suggesting voluntary mediation "in the presence of a third, impartial party." Frankel declined the offer of mediation. (Def. Exh. C at Tr. 200.)

16. On October 15, 2004, Frankel filed a charge with the New York State Division of Human Rights ("SDHR") alleging age discrimination and retaliation. (Def. Exh. N.)

17. In May 2005, Romel Osbourne began his employment at DEP as Supervisor of OIT's Networking Group. He reported to Leitch and he replaced Leitch as plaintiff's direct supervisor. (Def. 56.1 ¶67, admitted.)

18. On June 18, 2005, Osbourne sent an e-mail to Frankel which said in part:

> .... The second issue at hand is the network security incident that you created on Wednesday, 7/13 of last week. The ro[gu]e pc that you connected to the network was missing several security patches, did not have service pack 2, did not have virus protection software installed and was infected with the **w32/korgo.worm.v virus**. Once connected to the network this virus began to query and seek out servers and workstations to infect including the commissioner's workstation. Fortunately, Chuck Thompson caught this activity and was able to quarantine and immobilize the virus before things got worse. ....

(Def. Exh. R-1.) Frankel's opposing papers (Docket Item #39 ¶70) say: "This was an inadvertent act. A mistake that anyone could make but was made a big deal in order to retaliate. This type of

thing happens daily."

19.  In or around February 2006, plaintiff, as well as other employees in OIT, was issued his performance evaluation for 2005; it rated his performance as "unsatisfactory."  Prior to that review, DEP had never issued plaintiff an annual performance review, nor had he complained to anyone at DEP that he'd never received an annual performance review.  (Def. 56.1 ¶¶84-85, admitted.)

20.  In March 2006, SDHR issued its Final Investigation Report (Def. Exh. X) and its Determination and Order (Def. Exh. Y).  SDHR found no probable cause for Frankel's allegations of age discrimination and retaliation.  On April 20, 2006, the U.S. Equal Employment Opportunity Commission ("EEOC") adopted the findings of SDHR.  (First attachment to the Complaint in 06 Civ. 5450.)  Frankel challenged the SDHR determination by filing an Article 78 petition in May 2006, but he withdrew that petition in September 2006.  (Def. 56.1 ¶¶92-94, admitted.)

21.  On June 9, 2006, Frankel went to the New York City Commission on Human Rights ("CCHR") and charged a different type of discrimination - - he filed a charge of religious discrimination and retaliation.  (Def. Exh. U.)

22.  On July 19, 2006, Frankel came to our Court and filed the Complaint in 06 Civ. 5450, alleging age discrimination and retaliation.

23.  On May 1, 2007, Frankel filed the Complaint in 07 Civ. 3436, alleging religious discrimination and retaliation.  It appears that this allegation did not receive investigation by any administrative agency.  The Complaint's first attachment is a February 23, 2007 Notice of Right to Sue issued to Frankel "at your request" by the EEOC.  On May 7, 2007, CCHR issued a Notice of Administrative Closure "because Complainant has taken an action in court."  (Def. Exh. BB.)

## **LEGAL DISCUSSION**

24.  In responding to defendants' legal arguments, Frankel uses a method that puts the arguments and counter-arguments in a single document, **Docket Item #40.**  At the end of this document, he attaches a copy of defendants' 3/14/08 memorandum of law in support of their motion for summary judgment; he identifies 79 defense arguments and numbers them consecutively in the right-hand margins.  At the front of Docket Item #40, he types his

response to each of those 79 arguments, using headings such as "*Circled Item one,*" "*Circled Item two,*" etc.  (I have primarily studied the large-type version of this response, which runs 28 pages; in my view, Frankel made Docket Item #40 unnecessarily bulky by inserting, in addition, a smaller-type version that runs 25 pages.)

**I.  The age discrimination claim fails because no rational jury could find that Frankel has been subjected to an "adverse employment action."**  (See particularly Def. Mem. pp. 5-13, and Plaintiff's responses to Circled Items 13-25.)

25.   As I stated above at ¶7, "the ADEA does not allow plaintiffs to recover for emotional distress, pain and suffering, **or any other type of non-economic damage**." *Meyers v. I.B.M. Corp.*, 335 F.Supp.2d 405, 411 (S.D.N.Y. 2004) (Robinson, J.) (emphasis added).

26.   In this regard, Defendants' Memorandum, at page 8, makes the following crucial point:

> ... [P]laintiff's assignment to the Networking Group did not affect his salary, benefits or seniority, nor did his assignment result in a demotion in title.

Frankel does not contradict this.  He circles this passage as Circled Item 15, but responds in an indirect way:  "Plaintiff was replaced by Charles Thompson as Manager of Security/Analysis." He does not support this assertion with any citation to evidence. Moreover, Thompson always had a rank higher than plaintiff and even higher than Leitch; at Docket Item #39 ¶38, plaintiff says: "I believe that [during] all of the time period prior to 2004 Mr. Leitch [who was Network Administrator] reported to Mr. Thompson."

27.   Furthermore, Defendants' Memorandum, at page 13, states:

> ...  See Sanders v. N.Y. City Human Res. Admin., 361 F.3d 749, 756 (2d Cir. 2004) (holding that a negative performance evaluation that had no effect on the terms and conditions of the complainant's employment did not constitute an adverse employment action).  The evidence before the Court establishes that the unsatisfactory performance evaluations have had no effect on plaintiff's employment.  Indeed, plaintiff does not allege that he was ever

> disciplined, or demoted, or that he lost any salary or benefits from 2004 to the present. [Citing to plaintiff's deposition testimony.]

Frankel does not dispute this. He numbers this passage as Circled Item 25, but his only response is a weak attempt to distinguish the *Sanders* case: "Even if one unsatisfactory review is not an adverse action[,] three consecutive reviews are definitely an adverse action which could lead to one['s] dismissal." However, Frankel's reviews have not led to any dismissal, demotion, or suspension.

**II. Frankel's religious discrimination claim objects that certain voluntary overtime projects are scheduled for Friday evening or Saturday rather than Sunday; no rational jury could find that there was any "employment requirement" which conflicts with his religious beliefs.** (See particularly Def. Mem. pp. 19-25, and Plaintiff's responses to Circled Items 46-60.)

   28. Because of his religious observance, Frankel requested and received a special schedule: "My work hours are 8 to 4 ... Monday through Thursday and 7:30 to 2:30 on Friday, year in and year out." (Def. Exh. C, Frankel Depo. at Tr. 174.) When the Networking Group makes a new "network implementation," it commences the work on a Friday evening or on a Saturday. Frankel is not responsible for participating in such implementations, but he would like to participate. He says this would help him "to remain technically current in [the] profession," and that this is important to him, whereas the loss of "[o]vertime compensation is not the issue at hand." (Pl's response to Circled Item 49.) He concedes that it is wise to schedule implementation work for a weekend, to minimize disruptions for the end users of the network, and to make sure there are no glitches before the standard work-week starts on Mondays. But he suggests that this work ought to be commenced on Saturday evenings or on Sundays. He put it this way when he was taking the deposition of Assistant Commissioner McMaster:

> [Mr. Frankel:]  The question is should tasks in the networking group be moved to Sunday if Mr. Frankel was in that group and cannot participate as a full member of that group?
>
> [Mr. McMaster:]  No.
>
> [Mr. Frankel:]  Could you elaborate why?

>   [Mr. McMaster:]  Because the agency - - when you
>   do changes to the network on the agency, we generally
>   start on Friday night.  As a policy you want to make
>   the least impact to the agency as a whole[,] and if
>   you start Friday night into Saturday [then] you have
>   Sunday to recover if you go over.  Most agencies,
>   most businesses, operate and do changes over the
>   weekend starting on a Friday night, that's a
>   standard practice in the industry.

(Def. Exh. G, McMaster Depo. Tr. 64-65.)  DEP's policy is to reserve Sunday as a "safety" day, in case the implementation encounters problems.  This policy is obviously a rational one, even though Frankel alleges that a different City agency has a different practice.  (In Pl's response to Circled Item 59, Frankel writes:  "DOITT, as shown, does Sunday implementation as per examples shown.")

    29.  Defendants' Memorandum, at pages 19-20, says:

>   Plaintiff alleges he is discriminated against
>   based upon his religion because the Networking
>   Group to which he's assigned conducts its overtime
>   network implementation projects beginning on either
>   Friday evening or on Saturday.  ....
>
>   To make out a *prima facie* case of religious
>   discrimination, an employee must show that he
>   (a) held a "bona fide religious belief *conflicting
>   with an employment requirement*," (b) informed his
>   employer of this belief, and (c) was "disciplined
>   for failure to comply with the conflicting
>   employment requirement."  <u>Baker v. Home Depot</u>,
>   445 F.3d 541, 546 (2d Cir. 2006) (emphasis added)
>   ....

Frankel does not dispute that he must meet all three of those requirements in order to show a *prima facie* case.

    30.  Frankel has failed to meet two of those requirements.  He has failed to show that there has ever been any "employment requirement" that he work on Friday evenings or on Saturdays, or on any other day of religious observance.  He has failed to show that he was ever "disciplined" for failure to perform any work that was scheduled for a Friday evening or a Saturday.

**III. Frankel's retaliation claims fail because no rational jury could find that he has been subjected to "a materially adverse action," defined as that which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."** (See particularly Def. Mem. pp. 26-28, 30-31, and Plaintiff's responses to Circled Items 62-68, 71-72.)

31.   As mentioned above at Paragraph 12 of this Report, Frankel made his first complaint of discrimination on August 20, 2004, an internal complaint. He alleges that DEP and its supervisory employees retaliated against him by issuing unsatisfactory performance evaluations starting in February 2006.

32.   Defendants' Memorandum, at pages 26-27, says (with my emphasis added):

> To establish a *prima facie* case of retaliation under Title VII or the ADEA, a plaintiff must show "[1] participation in a protected activity, [2] knowledge by his employer of such activity, [3] that he suffered a **materially adverse action**, and [4] that there is a causal connection between the protected activity and the materially adverse action." Kessler v. Westchester County Dep't of Soc. Servs., 2006 U.S. App. LEXIS 21530, *24 (2d Cir. 2006) .... See also Burlington No. and Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2415 (2006). ...
>
> \*   \*   \*
>
> ... [A] materially adverse action [is] defined as that which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington, 126 S.Ct. at 2415. ...
>
> For example, in Burlington, the Supreme Court held that a transfer to a less prestigious assignment even if the rate of pay was the same constituted a materially adverse action. Id. at 2417. ...
>
> In fact, the Court in this District has held that a negative evaluation without any effect on employment does not constitute a materially adverse action even after Burlington. See Jackson v. City Univ. of N.Y., 2006 U.S. Dist. LEXIS 43338 (S.D.N.Y. [June 26, 2006) (Rakoff, J.)].

-10-

Frankel does not dispute this statement of the legal principles.

33.  Frankel essentially alleges that he got "a transfer to a less prestigious assignment" when he was assigned to the Networking Group, to be supervised by Keino Leitch.  But that transfer was ordered on or about August 16, 2004.  It cannot serve as a predicate for a retaliation claim, because it preceded Frankel's first complaint of discrimination, which was a complaint about that very transfer.

34.  As for the unsatisfactory performance evaluations that started in February 2006, Frankel has failed to show that they have resulted in any materially negative consequences.  After August 20, 2004, when he made his first complaint of discrimination, he has never been disciplined, demoted, or suspended.

### CONCLUSION AND RECOMMENDATION

For the reasons set forth above, I recommend that Judge Swain (a) grant the defendants' motion for summary judgment (Docket Item #37, replacing #31) and (b) deny plaintiff's motion for summary judgment (served on February 13, 2008, but docketed in June as Docket Item #48).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, any party may object to this recommendation within 10 business days after being served with a copy (i.e., **no later than August 25, 2008**) by filing written objections with the Clerk of the U.S. District Court and mailing copies (a) to the opposing party, (b) to the Hon. Laura Taylor Swain, U.S.D.J. at Room 755, 500 Pearl Street, New York, NY 10007 and (c) to me at Room 1360, 500 Pearl Street.  Failure to file objections within 10 business days will preclude appellate review.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), and 6(d).  Any request for an extension of time must be addressed to Judge Swain.

                                                    */s/ Douglas F. Eaton*
                                           DOUGLAS F. EATON
                                           United States Magistrate Judge

Dated: New York, New York
       August 11, 2008

Copies of this Report and Recommendation are being sent by fax and by mail to:

Mervyn Frankel
144-16 68 Drive
Flushing, NY 11367
(also by fax to 718-263-4564fax)

Kevin A. Madden, Esq.
New York City Law Department
100 Church Street, Room 2-122
New York, NY 10007-2601
(also by fax to 212-788-8877fax)

Hon. Laura Taylor Swain